IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| AUTOMATIC EQUIPMENT MANUFACTURING COMPANY, a Nebraska company;<br><br>Plaintiff/Counter-Defendant,<br><br>and<br><br>CREED-MONARCH, INC., A Connecticut Corporation;<br><br>Intervenor/Counter-Defendant<br><br>vs.<br><br>DANKO MANUFACTURING, LLC, a Colorado limited liability company;<br><br>Defendant/Counter-Plaintiff. | 8:19-CV-162<br><br>MEMORANDUM AND ORDER |

## I. INTRODUCTION

This matter comes before the Court on the parties' various pretrial motions. Filing 77; Filing 79; Filing 86; Filing 97; Filing 105; Filing 108. The Court grants Plaintiff's Motion in Limine to Exclude Expert Witness Testimony on Patent Infringement and Invalidity, Filing 77; grants Plaintiff's Motion in Limine to Exclude Evidence and Testimony of Non-Comparable Licenses, Filing 79; grants Defendant's Motion to Supplement, Filing 105; denies Defendant's Consolidated Motions in Limine, Filing 86; denies Plaintiff's Motion to Strike, Filing 97 as moot; and denies Defendant's Motion to Strike, Filing 108.

## II. BACKGROUND

1

Plaintiff, Automatic Equipment Manufacturing Company doing business as Blue Ox, and Intervenor, Creed-Monarch, Inc. (jointly, "Blue Ox"),[1] seek a declaratory judgment to the effect that Defendant's, Danko Manufacturing, LLC's ("Danko's) patent for a towed-vehicle brake detection system is invalid. Filing 4 at 2. Danko filed a counterclaim alleging Blue Ox infringed on said patent. Filing 8 at 11-14.

The patent at the center of the dispute is U.S. Patent No. 10,137,870 ("the '870 Patent") which was issued by the U.S. Patent and Trademark Office on November 27, 2018, and which is presently assigned to Danko. Filing 4-1 at 2. The '870 Patent describes a brake-lock detection system. Filing 4-1 at 2. It is used when one vehicle is towing another, and the user wishes to employ both the towing and towed vehicles' brakes. Filing 4-1 at 11. To do so, the user installs an auxiliary brake activation system in the towed vehicle which serves to activate the towed vehicles brakes at the same time as the towing vehicle brakes. Filing 4-1 at 11. The invention described in the '870 Patent "relates to . . . a structure and method for detecting when the brakes of a towed vehicle are locked by a brake activation system." Filing 4-1 at 11.

The parties have filed various pretrial motions in advance of the jury trial set in this matter for September 14, 2021. The Court will address each motion in turn.

### III. ANALYSIS

#### A. Plaintiff's Motion in Limine to Exclude Expert Witness Testimony on Patent Infringement and Invalidity

Blue Ox first moves in limine to exclude Danko from presenting "expert testimony on the on the issues of infringement, validity, and claim construction," lay opinion testimony regarding whether any prior art reference(s) limit or invalidate the claimed patent, and any opinion testimony

---

[1] Plaintiff Blue Ox and intervenor Creed-Monarch assert the same interests and have submitted combined briefing.

regarding a witness's "subjective interpretation" of the claims. Filing 77 at 1-2. Danko argues the inventors should be permitted to testify from their personal knowledge regarding "[their] own subjective interpretation[] of [their] own patent, of competitive devices, [and] of prior art." Filing 103 at 2. The Court grants Blue Ox's motion.

Jared Burkhardt and Daniel Decker are two of the inventors of the '870 patent. Danko agrees that it did not designate Decker, Burkhardt, or indeed anyone other than its damages expert, as an expert witness, and the deadline for expert designations has passed. Filing 55 (setting expert-witness disclosure deadline for January 19, 2021); Filing 103 at 1 (Danko conceding it "elected not to make a technical expert a part of its case in chief"). However, it argues that its inventor–witnesses should be permitted to testify regarding "the details of their inventions, competitive brake control systems, and prior art," provided "Danko makes a proper foundational showing that [they] are skilled artisans." Filing 103 at 4. Blue Ox agrees Decker and Burkhardt should be permitted to testify "about facts concerning the patent and the development of that invention" but not about their opinions regarding infringement and invalidity. Filing 110 at 3 n.1.

Rule 701 governs non-expert opinion testimony:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:

(a) rationally based on the witness's perception;

(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and

(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

The United States Court of Appeals for the Federal Circuit has found that inventors not otherwise qualified as experts cannot offer opinion testimony and are limited to presenting factual

3

testimony. See *Verizon Servs. Corp. v. Cox Fibernet Virginia, Inc.*, 602 F.3d 1325, 1339–40 (Fed. Cir. 2010) ("The district court properly allowed testimony from the witnesses about the patents they invented based on their personal knowledge, and properly excluded these same witnesses from providing expert testimony on invalidity for which they had not previously provided expert reports or been qualified as an expert."); *Air Turbine Tech., Inc. v. Atlas Copco AB*, 410 F.3d 701, 714 (Fed. Cir. 2005) ("[T]he fact that [the witness] may have particularized knowledge and experience as a co-inventor of the claimed invention does not necessarily mean he also has particularized knowledge and experience in the structure and workings of the accused device. Under these circumstances, we cannot say that the district court abused its discretion in concluding that [the witness's] testimony amounted to improper expert testimony.").

Accordingly, because Decker and Burkhardt have not been disclosed or qualified as expert witnesses, the Court concludes they are limited to presenting factual testimony based on their personal knowledge and may not present expert opinion testimony. Accordingly, Blue Ox's Motion in Limine, Filing 77, is granted.

### B. Plaintiff's Motion in Limine to Exclude Evidence and Testimony of Non-Comparable Licenses

Blue Ox next moves in limine to prevent Danko's damages expert, Darrell Harris, from presenting testimony based on what it views to be license information and technology that are not comparable to the '870 patent. Filing 79; Filing 80 at 1-2. Danko responds that Harris worked with the only available comparison information and his testimony should not be excluded. Filing 102 at 2. The Court concludes Harris's comparable-licenses testimony must be excluded.

Danko's damages expert, Darrell Harris, submitted an amended damages report in June 2021 calculating the potential damages to which Danko would be entitled should Blue Ox be found

4

to have infringed Danko's patent. Filing 83-1 at 1. In support of this assessment, Harris considered what a reasonable royalty rate might have been had Danko and Blue Ox agreed upon such a license rate at the outset. Filing 83-1 at 2; *see also Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (stating one factor in the determination of the amount of a reasonable royalty is what the patentee and infringer would have agreed upon if both had been trying to reach an agreement at the time the infringement began), *modified sub nom. Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1325 (Fed. Cir. 2009) ("We review the damages award within the *Georgia–Pacific* framework."). Harris opined that a twelve percent royalty rate would have been appropriate. Filing 83-1 at 2. To arrive at this royalty rate, Harris looked to royalties paid in other licensing agreements. Filing 83-1 at 2; *see Georgia-Pac.*, 318 F. Supp. at 1120 (stating the second factor in the determination of the amount of a reasonable royalty is the licensing rates paid for other patents comparable to the patent-in-suit). Harris's entire statement of the comparable-royalty analysis takes up a single paragraph of his report:

> In my review of the general category of transportation components, I found [a] wide range of rates that varied from 1% to 10% based on sales. A rate of 12% was based on gross profits. I would normally use a rate base on some measure of sales, **however, Blue Ox has only provided information regarding their gross profit margin on the accused product**. Therefore, the 12% royalty rate would be most appropriate in this case. I applied the 12% royalty rate to gross profits of Blue Ox and determined this would represent [a] 7.37% royalty rate on sales (**Exhibit 6**). This is within the results of the royalty rate survey in **Exhibit 5**.

Filing 83-1 at 2 (emphasis in original).

The case of *Lucent Technologies., Inc. v. Gateway, Inc.*, 580 F.3d 1301 (Fed. Cir. 2009), is instructive. In that case, the Federal Circuit found the jury's damages award was not supported by sufficient evidence because the plaintiff's damages expert's testimony was inadequate. *Id.* at 1326-27. The plaintiff's expert had presented only "superficial" testimony about allegedly

5

comparable licensing agreements. *Id.* at 1329-30. The expert did not discuss the details of the other licensing agreements nor did he explain how the differences between the real and hypothetical license negotiations factored into his assessment of the appropriate royalty. *Id.* at 1329. The court found that the "damages award cannot stand solely on evidence which amounts to little more than a recitation of royalty numbers, . . . particularly when it is doubtful that the technology of those license agreements is in any way similar to the technology being litigated here." *Id.*

Harris's proposed testimony suffers from the same fatal flaw as the expert's testimony in *Lucent Technologies*. His expert report does not provide any details of the other licensing agreements by which a jury could assess their comparability to the royalty at issue in this case. Harris admits he relied upon a "review of the general category of transportation components" and then provides a range of rates from this general review. Filing 83-1 at 2. Indeed, Harris's analysis includes nothing but a listing of other royalties, with no description of the licensing agreements or discussion of why such licensing agreements are in any way comparable to the present dispute. Such a vague and broad overview of allegedly comparable licensing agreements, unsupported by any additional details of the agreements themselves or the technologies to which they relate, is inadequate as a matter of law. *See Lucent Tech.*, 580 F.3d at 1326-30. Harris will not be allowed to provide new information at trial on this issue that was not included in his expert report. Accordingly, Harris's testimony of allegedly comparable licensing agreements and the related portions of his report must be excluded.[2] The Court grants Blue Ox's Motion in Limine. Filing 79.

### C. Defendant's Consolidated Motions in Limine and Related Motions

---

[2] In response, Danko argue that Blue Ox had the opportunity to question Harris on his mere listing of purportedly comparable licensing agreements and royalty numbers at his deposition on July 21, 2021, but Blue Ox failed to do so. Filing 102 at 6. It is not Blue Ox's obligation to create a record at deposition which might fix a fatal flaw in part of an opposing party's expert disclosures. It is Danko's burden to provide a comparative analysis that complies with the law. Harris's mere list of purportedly comparable royalties—which the Court knows nothing more about than Harris's claim that they are "transportation components"—fails to do so.

Danko files five motions in limine. It seeks to limit Blue Ox's invalidity arguments; to exclude Plaintiff's expert's, David Bailey's, reports and testimony; to exclude prior art evidence; to permit the '870 patent's inventors to testify about their personal knowledge, prior art, and other auxiliary braking systems; and to exclude portions of Blue Ox's expert damages rebuttal witness's, Dr. Robert Kneuper's, testimony and reports. Filing 86 at 2. Blue Ox moves to strike the first two portions of Danko's motion in limine and for sanctions and attorney fees. Filing 97. Danko opposes the remaining portions of the consolidated motion. Filing 98 at 16-21. Finally, Danko moves for leave to supplement its consolidated motion. Filing 105. The Court grants Danko leave to supplement, denies Danko's five motions in limine, and denies Blue Ox's motion to strike as moot.

1. *Motion to Supplement*

Danko moves for leave to supplement its consolidated motions in limine. Filing 105. It seeks to add claim charts that were inadvertently omitted from its prior filing and counsel's declaration which authenticated the other exhibits submitted in support of its motion. Filing 105 at 1. Because the supplementations do not change the court's analysis of the motions and therefore do not prejudice Blue Ox, Danko's Motion to Supplement is granted.

2. *Motions to Limit Invalidity Arguments and Exclude Bailey*

Danko's first two motions in limine relating to invalidity arguments and Bailey's testimony require explanation of portions of the procedural history of this case. On August 21, 2019, the Court issued a scheduling order requiring the plaintiff to serve its invalidity contentions by September 23, 2019. Filing 19 at 3. Blue Ox timely served its invalidity contentions on this date. Filing 99-1 at 1. Upon Danko's request, Blue Ox served supplemental invalidity contentions on November 11, 2019. Filing 99-1 at 1.

Following the Court's ruling on the *Markman* hearing, it entered a second-phase scheduling order governing expert-witness disclosure and other pretrial filing matters. Filing 55. Additionally, the order provided that the deadline for the parties to file dispositive and *Daubert* motions was May 3, 2021. Filing 55 at 2. The parties timely disclosed their respective experts in accordance with this order, but neither party filed a dispositive or *Daubert* motion prior the May 3, 2021 deadline.

On May 13, 2021, Danko requested additional clarification of Blue Ox's invalidity contentions. Filing 65-1 at 3. Blue Ox responded that it intended to rely on its previously disclosed expert's, Bailey's, opinions in support of its invalidity defense. Filing 65-1 at 2. On June 3, 2021, Danko requested Blue Ox supplement its supplemental invalidity contentions, which Blue Ox did. Filing 99-1 at 2.

On June 17, 2021, Danko filed a motion to extend the already-expired dispositive-motion and *Daubert* deadlines. Filing 62. It argued an extension was necessary because Blue Ox had repeatedly been unclear about its invalidity contentions and this had delayed Danko being able to respond. Filing 62 at 2-3. On June 28, 2021, Magistrate Judge Nelson held a hearing on Danko's motion to extend the dispositive-motion and *Daubert* deadline. Filing 67. Magistrate Judge Nelson concluded Danko had not shown good cause to extend the dispositive-motion and *Daubert* deadline and denied Danko's motion. Filing 67; Filing 68.

Danko now moves in limine to limit Blue Ox's invalidity evidence to the scope of its November 2019 invalidity contentions. Filing 86 at 6. Danko argues Blue Ox has been unclear in their invalidity contentions following this date, as evidenced by Danko's repeated requests that Blue Ox supplement its contentions. Filing 86 at 9-10. It argues it has been prejudiced by Blue

8

Ox's "shifting-sands of wildly different [invalidity] contentions" and thus seeks to exclude any invalidity arguments made after November 2019. Filing 87 at 16-17.

Danko also seeks to exclude Bailey's testimony and reports regarding invalidity and noninfringement. Filing 86 at 18-20. It argues that Baileys' reports rely on the invalidity contentions it seeks to have excluded and are otherwise "replete with . . . frivolous and fraudulent methodology." Filing 86 at 19.

Danko's motion regarding invalidity contentions, although titled a motion in limine, seeks to have the Court make a dispositive ruling on the merits of Blue Ox's invalidity contentions. Similarly, Danko's motion regarding Bailey's testimony is nothing more than a *Daubert* motion.[3] The dispositive-motion and *Daubert* deadlines have long passed and Danko's motions are therefore untimely. Furthermore, Danko's arguments regarding what it perceives to be as Blue Ox's "gamesmanship" during discovery, Filing 86 at 16, were never brought before the court in a timely fashion. Rather, the first time Danko raised the argument that it believed Blue Ox had failed to properly disclose invalidity contentions and supporting evidence was at the June 28, 2021, hearing regarding its motion to extend the dispositive-motion and *Daubert* deadlines, which Magistrate Judge Nelson denied.

The time for raising discovery- and disclosure-related motions has long since passed. Danko's motion seeking summary judgment regarding Blue Ox's invalidity contentions and its *Daubert* motion are likewise untimely. Thus, the Court denies Danko's motions seeking to limit Blue Ox's invalidity evidence and to exclude the testimony and reports of David Bailey at trial. Because it denies Danko's motions relating to invalidity and Bailey's testimony, it denies Blue Ox's motion to strike these motions in limine as moot.

---

[3] Indeed, Danko seems to concede as much by citing to *Daubert* in its motion. Filing 86 at 19 (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993)).

*3. Motion to Exclude Non-Prior Art Evidence*

Danko next moves to exclude what it refers to as the "CM 2011B" evidence, "a cavity in the housing and electrical lead on the printed circuit board" in Blue Ox and Creed-Monarch's Patriot models of brake-lock detection technology which are at issue as potentially infringing upon Danko's '870 patent. Filing 86 at 20. Danko argues Blue Ox has been inconsistent in whether it is claiming the CM 2011B is prior art to the '870 patent and refused to disclose its own patent (the '947 application) relating to the CM 2011B evidence. Filing 86 at 20-21. Danko argues Blue Ox "intentionally withheld the CM 2011B evidence" and it must therefore be excluded. Filing 86 at 21.

As with its first two motions in limine, Danko focuses on what it perceives to be Blue Ox's evolving arguments, failure to disclose information, and inadequate discovery responses. All such contentions should have been raised in a timely motion during the discovery process. It cites no authority requiring the Court to exclude this evidence in limine and the Court finds no reason for doing so. Accordingly, Danko's motion to exclude the CM 2011B evidence is denied.

*4. Motion to Allow Inventor Testimony*

Danko next "moves that the Court enter a motion in limine permitting inventors, upon a foundational showing of being a skilled artisan, to testify about their personal knowledge of Danko's '870 Patent, prior art patents, and auxiliary braking systems for towing vehicles." Filing 86 at 22. This issue has already been addressed in Blue Ox's motion in limine, Filing 77, above, and is therefore denied as moot.

*5. Motion to Exclude Dr. Kneuper's Testimony and Reports*

Danko's final motion in limine seeks to exclude certain testimony and evidence from Blue Ox's damages expert, Dr. Kneuper. In particular, Danko argues that portions of Dr. Kneuper's

report and testimony are "incorrect" and "stigmatize" Danko's damages expert, Harris. Filing 86 at 23. Danko argues Dr. Kneuper criticizes certain inaccuracies in Harris's report but that these inconsistencies exist in Harris's report because Blue Ox "inexplicably provided one set of sales numbers to Mr. Harris and then provided a different set of sales numbers to Dr. Kneuper for his rebuttal." Filing 86 at 23. Danko provides no factual support for its assertions that Harris received incorrect sales numbers. In response, Blue Ox submits an affidavit from counsel averring that it timely provided all the requested damages data to Danko. Filing 99-1 at 2.

In light of Danko's lack of factual support for its assertions regarding Dr. Kneuper's allegedly unfair criticisms and Blue Ox's evidence that the sales data was properly disclosed, the Court denies Danko's motion to limit Dr. Kneuper's testimony. The bases for Harris's and Dr. Kneuper's reports and statements therein can be properly explored during direct and cross examination at trial.

### D.  Defendant's Motion to Strike Plaintiff's 35 U.S.C. § 282 Notice

Lastly, Danko moves to strike Blue Ox's notice pursuant to 35 U.S.C. § 282. Filing 108. Danko argues Blue Ox has pled defenses in its Answer which are not permitted by law and that its "defenses of invalidity are empty, entirely formulaic, and are mere unsupported conclusory opinions." Filing 108 at 4-6. It also focuses on what it claims were Blue Ox's changing invalidity contentions during the course of discovery. Filing 108 at 11-19. Blue Ox argues Danko's motion is unsupported, misconstrues § 282, and should be denied. Filing 113 at 6-9.

> 35 U.S.C. § 282 states in relevant part,
>
> In an action involving the validity or infringement of a patent the party asserting invalidity or noninfringement shall give notice in the pleadings or otherwise in writing to the adverse party at least thirty days before the trial, of the country, number, date, and name of the patentee of any patent, the title, date, and page numbers of any publication to be relied upon as anticipation of the patent in suit or, except in actions in the United States Court of Federal Claims, as showing the state

> of the art, and the name and address of any person who may be relied upon as the prior inventor or as having prior knowledge of or as having previously used or offered for sale the invention of the patent in suit. In the absence of such notice proof of the said matters may not be made at the trial except on such terms as the court requires.

35 U.S.C. § 282(c).

Section 282 is a notice provision. As the Federal Circuit noted, its purpose is "to prevent patentees being surprised, at the trial of the cause, by evidence of a nature which they could not be presumed to know, or be prepared to meet, and thereby to subject them either to most expensive delays, or to a loss of their cause." *Eaton Corp. v. Appliance Valves Corp.*, 790 F.2d 874, 879 (Fed. Cir. 1986) (citation omitted). "The objective of section 282's provision for advance notice is to prevent unfair and prejudicial surprise by the production of unexpected and unprepared-for prior art references at trial." *Id.* (citing *Shatterproof Glass Corp. v. Guardian Glass Co.*, 462 F.2d 1115, 1120 (6th Cir. 1972)).

Danko does not contend that Blue Ox failed to comply with the timing requirement of § 282. Rather, its motion to strike focuses on what it perceives to be Blue Ox's changing arguments, pleading inaccuracies, failure to timely disclose information, and inadequate discovery responses. *See* Filing 108. The purpose of § 282 is to provide adequate notice of a party's intention to rely upon prior art, not to serve as a vehicle for belatedly raising discovery grievances or litigating an untimely motion to dismiss causes of action and affirmative defenses pled in a party's answer. The Court concludes Blue Ox's notice complies with 35 U.S.C. § 282, and denies Danko's motion to strike it.

## IV. CONCLUSION

The Court rules upon the parties' various pretrial motions as set forth herein.

Accordingly,

IT IS ORDERED:

1. Plaintiff's Motion in Limine to Exclude Expert Witness Testimony on Patent Infringement and Invalidity, Filing 77, is granted;

2. Plaintiff's Motion in Limine to Exclude Evidence and Testimony of Non-Comparable Licenses, Filing 79, is granted;

3. Defendant's Motion to Supplement, Filing 105, is granted;

4. Defendant's Consolidated Motions in Limine, Filing 86, is denied in full;

5. Plaintiff's Motion to Strike, Filing 97, is denied as moot; and

6. Defendant's Motion to Strike, Filing 108, is denied.

Dated this 8th day of September, 2021.

BY THE COURT:

_____
Brian C. Buescher
United States District Judge